**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **CELTIC CAPITAL CORPORATION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )          **Case No. 1:19-cv-00199-SNLJ** |
| | ) |
| **DOMINION GROUP, LLC., et al.** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants Joe Cline and Wesley Robert's motion to set aside default judgment (ECF #10). For the reasons that follow, defendants' motion will be **GRANTED** and the Clerk's Entry of Default entered on March 25, 2020 (ECF #9) will be **SET ASIDE**.

Defendants are guarantors to a promissory note executed by co-defendants Dominion Group, LLC. and Cape Quarry, LLC. on or about April 25, 2018 in the amount of $1,341,600. Before this case was removed to federal court on November 11, 2019, co-defendants Dominion Group and Cape Quarry filed for Chapter 11 bankruptcy protection. On the same day this case was removed, they filed a "notice of automatic stay" notifying plaintiff that the case would be automatically stayed "against the debtors" pursuant to 11 U.S.C. § 326(a). Defendants did not timely respond to plaintiff's complaint, and so a Clerk's Entry of Default was entered against them on March 25, 2020, following an unopposed motion for clerk's default filed by plaintiff in early December, 2019. (ECF #7, 9). Five days after the clerk's default was entered, defendants filed their present motion

arguing it should be set aside because they were "led to believe that … the action before the Court would remain dormant" given their active "negotiat[ions]" with plaintiff and because Dominion Group and Cape Quarry "were seeking reorganization under Chapter 11." In other words, "defendant[s] had reason to believe that the matter against them individually had been stayed." Defendants point out how the "Court's own docket [shows] in bright red letters that the matter had been 'stayed.'"

Defendants' arguments are misplaced. It is "well settled" law that "the automatic stay does not [generally] apply to non-bankrupt co-debtors." *Winters By & Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996); *see also In re Panther Mountain Land Dev., LLC*, 686 F.3d 916, 921 (8th Cir. 2012) (accord); *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012) (the automatic stay "does not generally apply to … guarantors"). So, defendants were simply wrong to conclude as they did that the automatic stay applied to them—whatever they took the stay flag on the docket sheet to mean. It is equally disingenuous to suggest that mere out-of-court "negotiations" waive or delay their responsibility to timely respond to the complaint; defendants provide no authority whatsoever to support such an argument.

In any event, because this Court had not yet addressed plaintiff's motion for default judgment by the time defendants filed their motion, the only default to "set aside" at this stage is the clerk's default, which is governed by Rule 55(c). That rule provides a court authority to set aside a clerk's default on the basis of "good cause" shown. FED. R. CIV. P. 55(c). In applying this standard, the Eight Circuit "focus[es] heavily on the blameworthiness of the defaulting party." *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d

2

781, 784 (8th Cir. 1998). It also looks to "whether the defaulting party has a meritorious defense and whether the other party would be prejudiced if the default were excused." *Id*. "[C]ontumacious or intentional delay or disregard for deadlines" are treated more harshly than "marginal failure[s]," the former having "rarely, if ever, [been] excused." *Id*.

Applying that standard here, the Court begins by noting its serious reservations about defendants' conduct. Defendants are expected to know "well settled" law regarding the scope of an automatic stay under Section 326(a), and it does not do to simply place blame on the Court based on their own misunderstandings. It is also deeply concerning that they do not refute that they have "had nine months to file some form of a response" to plaintiff's complaint—having been served in June 2019, well before any stay was entered. However, this being said, "[t]he entry of a default judgment should be a rare judicial act." *Comiskey v. JFTJ Corp*., 989 F.2d 1007, 1009 (8th Cir. 1993) (internal quotations omitted). And plaintiff points to no serious prejudice if this Court were to set aside the clerk's default—except for unfounded conclusions and accusatory labels that it "has [been] prejudiced" by defendants "intentional delay tactics." "[P]rejudice may not be found from delay alone or from the fact that the defaulting party would be permitted to defend on the merits." *Maritz Inc. v. C/Base, Inc*., 2007 WL 3120020 at *2 (E.D. Mo. Oct. 22, 2007).

As this Court views what transpired, it may be that defendants' conduct was considerably "sloppy and careless," but there is no showing that it was "intentionally concocted" or done in "bad faith." *Johnson v. Leonard*, 929 F.3d 569, 574 (8th Cir. 2019). Defendants responded within five days of the Clerk's Entry of Default being

docketed—suggesting some sense of sincere, if mistaken, confusion about the status of the case pending Dominion Group and Cape Quarry's Chapter 11 bankruptcy proceedings. Nor has defendants' conduct caused a "concrete," identifiable prejudice to plaintiff such as the "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Dayton Elec. Mfg. Co*., 140 F.3d at 785. Indeed, defaults have been set aside for equally (or more) egregious conduct as what occurred here. *See, e.g., Id.* at 784-785 (district court abused its discretion in refusing to set aside default that resulted from "poor communication" despite finding that defendant's attorney was "careless" and took a "cavalier approach to litigation" risking "precisely the adverse result rendered by the district court"); *Leonard*, 929 F.3d at 574 (district court did not abuse its discretion in setting aside default where it was "debatable" whether defendant was "sloppy and careless" or "intentional" when choosing not to respond based on the assumption that detainee would correct the misspelling of his business's name in the complaint and re-serve him). Therefore, recognizing the strong "judicial preference for adjudication on the merits," *Johnson*, 140 F.3d at 784, this Court cannot say that defendants' conduct was so blameworthy as to deny them a right to defend themselves against a million-dollar promissory note. The Clerk's default will be lifted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Joe Cline and Wesley Robert's motion to set aside default judgment (ECF #10) is **GRANTED** as to the Clerk's Entry of Default entered on March 25, 2020 (ECF #9), which is hereby **SET ASIDE**.

So ordered this 1st day of May 2020.

_____

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE